WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terance Taylor Prigge,<br><br>    Petitioner,<br><br>v.<br><br>USA,<br><br>    Respondent. | No. CV-17-00327-PHX-GMS (MHB)<br>CR-13-01363-PHX-GMS<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

Terance Taylor Prigge ("Movant"), who is confined in the Federal Correctional Institution in Phoenix, Arizona, filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 motion"). (CV-17-00327-PHX-GMS, "CVDoc." 1; CR-13-01363-PHX-GMS, "CRDoc." 240.) He asserts several claims of ineffective assistance of trial and appellate counsel. The United States of America (the "government") filed a Response. (CVDoc. 6.) Movant then filed a Reply. (CVDoc. 12.)

## BACKGROUND

On October 1, 2013, Movant was charged by Superseding Indictment with the following crimes: conspiracy to possess with the intent to distribute controlled substance (count 1), promotional money laundering (count 2), international money laundering (count 3), money laundering conspiracy (count 4), and possession with the intent to distribute cocaine (count 5). (CRDoc. 41.) Co-defendant Matthew Gruender ("Gruender")

was also charged in the drug conspiracy count. (Id.) The court appointed Robert McWhirter ("trial counsel") to represent Movant. (CRDoc. 11.)

Movant proceeded to trial on the charges. At trial, the government presented evidence of Movant's drug trafficking operation. The indictment charged that the conspiracy took place from "at least in or about April, 2010 to on or about September 21, 2013." (CRDoc. 41.) Co-conspirator Shane Grafman testified at trial and described a conspiracy involving Movant, himself and others, to traffic in marijuana and cocaine. The drugs were obtained from Mexico and stored in stash houses in Phoenix before being shipped to other places in the United States. In 2010, Grafman worked on Movant's behalf to secure and transport 100 kilograms of cocaine from Latin America, to the Chicago area on private jets, each flight carrying 25 kilograms. The first of the flights was organized by Movant and the remaining three were organized by Grafman in coordination with an associate, Jeff Labriola, who also testified at trial. Grafman testified that Movant was on two of the flights, and on a third, Movant was waiting in Chicago to receive the cocaine from Grafman and Labriola. Emails containing flight records corroborated Grafman's and Labriola's testimony. Travel records and other testimony corroborated Grafman's testimony. Movant then organized the transportation of drug proceeds from Chicago to Phoenix.

In 2010, police stopped Grafman and co-conspirator Patrick Burke in a car in Oklahoma, in which they discovered nearly $700,000 in drug proceeds related to the drug conspiracy in a secret compartment. Also, on November 4, 2010, Movant was with nearly $300,000 in cash on an Amtrack train in New Mexico. In late 2010, Grafman left the conspiracy.

On September 21, 2013, Movant and co-defendant Gruender flew to DeKalb, Illinois on a privately retained jet. The airport manager became suspicious and called police. Both Gruender and Movant were questioned and gave inconsistent answers as to their purpose for being in town. Twenty-two kilograms of cocaine were later found inside two duffel bags found on the plane. Grafman testified that the Dekalb airport was

utilized when transporting drugs by plane because it was remote and staffed by only one college student, and unstaffed at night.

Co-defendant Gruender testified that he booked private flights for Movant to further his drug trafficking over the years, and that his role expanded in 2013, because Movant needed more help as the majority of his associates were incarcerated. On July 13, 2013, Gruender wired $100,000 to an account in Guatemala at Movant's request to further a relationship with a drug supplier. Later in the year, on September 21, 2013, Gruender, in exchange for $10,000, traveled with Movant to transport the cocaine to the DeKalb airport (as described further above). Three days after this flight, law enforcement searched the trash receptacle outside Movant's home and found two Western Union wire transfer receipts, dated September 10 and 14, 2013, which showed Movant as the sender and an individual in Guatemala as the recipient.

On September 25, 2013, both Movant and Gruender were arrested and their homes in Arizona searched. Found in Gruender's home were printed emails from Movant to Gruender instructing him wire $100,000 to an account in Guatemala, as well as a large electric welder that had been hollowed-out to transport and conceal money and drugs. The welder had been described by Grafman as an item used by Movant's drug trafficking operation. Found inside Movant's truck was a handwritten scrap of paper containing the account number from which Gruender had wired the money to Guatemala, as well as numerous documents detailing large payments for goods and services in cash. Inside of Movant's trash receptacle were money wire receipts reflecting their purchase from a Phoenix grocery store. Inside Movant's home were found various receipts for tens of thousands of dollars worth of home remodeling services paid for in cash. Further investigation into Movant's finances revealed a largely all-cash lifestyle. In addition, Grafman testified that he helped purchase a PT Cruiser car for the organization in 2010, and that the vehicle was outfitted with a secret compartment for holding drugs and money. Gruender testified that in September, 2013, he and Movant had been transported in around Chicago in a PT Cruiser that had a secret compartment, and that this vehicle

1 had been used by Movant's organization for years prior to 2013.

After five days of trial, on February 12, 2015, the jury convicted Movant of all counts. (CRDoc. 162.) Subsequently, the court sentenced Movant to concurrent terms of 320 months on counts one and five, to run concurrent with a term of 240 months on counts two, three, and four. (CRDoc. 194.)

Movant appealed his judgment and sentence. Movant's trial counsel represented him on appeal. On September 18, 2015, counsel filed an appellate brief, raising two issues: that the District Court erred in failing to rule on his motion to preclude the use of Movant's prior conviction to impeach his testimony, and that the District Court failed to sever the five charged counts after the superseding indictment adding a different conspiracy involving multiple, unrelated defendants. (CVDoc. 6, Exh. 10.) Movant later claimed he never received a copy of counsel's opening brief before it was filed, despite his multiple requests. (CVDoc. 1 at 18; CRDoc. 240 at 18.) Movant requested that counsel supplement his brief with several issues counsel had not raised in his brief.

On April 25, 2016, Movant filed a *pro se* supplemental brief with the Ninth Circuit, setting forth the issues counsel declined to include in his brief. (CVDoc. 6, Exh. 1.) On May 10, 2016, the Ninth Circuit declined to consider the brief, as Movant was represented by counsel. (Id., Exh. 2.) Movant then filed a *pro se* motion with the Ninth Circuit to replace counsel, for the reason that counsel would not argue the issues Movant wanted addressed. (Id., Exh. 5.) In counsel's response to the motion, he indicated that he had considered the issues Movant requested that he raise, but, exercising his professional judgment did not believe they had a chance of success. (Id., Exh. 6.) On July 19, 2016, the Ninth Circuit denied the motion. (Id., Exh. 8.)

On July 29, 2016, the Ninth Circuit affirmed Movant's conviction in United States v. Prigge, 830 F.3d 1094 (9th Cir. 2016). The United States Supreme Court denied Movant's petition for writ of certiorari on January 9, 2017, in Prigge v. United States, 137 S. Ct. 697 (2017).

On February 1, 2017, Movant filed his 2255 motion, raising nine claims of

ineffective assistance of counsel:

(1) "Counsel was ineffective for not requesting a specific unanimity instruction as to count one and count four[;]"

(2) "Counsel was ineffective for failing to object to the lack of venue as to count two of the superseding indictment[;]"

(3) "Counsel was ineffective for failing to move to dismiss count two as there was no evidence of promotional money laundering[;]"

(4) "Counsel was ineffective for failing to raise the issue that there was no evidence that the $100,000 was the proceeds of specified unlawful activity[;]"

(5) "Counsel was ineffective for failing to raise in a Rule 29 Motion or on appeal that there was insufficient evidence of a money laundering conspiracy[;]"

(6) Counsel was ineffective for failing to object to the Government's closing argument;

(7) Counsel was ineffective for failing to challenge on appeal the Court's admission of Joshua Hopkins' statements through the testimony of a DEA agent;

(8) Counsel was ineffective for failing to object to the presentence investigation;

(9) "Counsel's cumulative errors amounted to prejudice, even if no single error did."

(CV Doc. 1; CR Doc. 240.)

## DISCUSSION

In its Response, the Government argues that Movant's ineffective assistance of counsel claims have no merit, and that therefore, Movant's 2255 motion should be denied and dismissed with prejudice.

The Supreme Court, in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), established a two-prong test for determining ineffective assistance of counsel. To prevail

on an ineffective assistance claim, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

The court need not address both Strickland requirements if the petitioner makes an insufficient showing regarding just one. See id. at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the other").

There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. Review of counsel's performance is extremely limited. Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 669. "If counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective." Strickland, 466 U.S. at 681. Regardless, an indigent client does not have " a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). A mere showing that a client's argument was theoretically viable is not sufficient, since effective legal advocacy involves selectivity of arguments based on their strength. Smith v. Murray, 477 U.S. 527, 536 (1986). "Those strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." Strickland, 466 U.S. at 681.

To show ineffective assistance of appellate counsel, a defendant must show that appellate counsel acted unreasonable in failing to raise a merit-worthy issue. Moorman

v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).

**MOVANT'S CLAIMS**

**1. Specific Unanimity Instructions for Counts One and Four.**

Movant claims that the evidence at trial established at least two separate conspiracies, and that therefore, his counsel was ineffective by not requesting a unanimity instruction, or otherwise seeking dismissal of the conspiracy counts based upon "fatal variance, duplicity and multiple conspiracies." (CVDoc. 1 at 19-22.) "A single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators," and that "the evidence must show that each defendant knew, or had reason to know, . . . that his benefits were probably dependent upon the success of the entire operation." United States v. Duran, 189 F.3d 1071, 1080 (9th Cir. 1999) (citations and internal quotations omitted). "Typically, the inference of an overall agreement is drawn from a single objective, ... or from proof that the key participants and the method of operation remained constant throughout the conspiracy." Id. (citation and internal quotations omitted).

A general jury instruction that the jury must unanimously agree that the government has proven all of the elements of the charged offense is usually sufficient to assure a unanimous verdict, unless "it appears that there is a genuine possibility of jury confusion or that a conviction may occur as a result of different jurors concluding that the defendant committed different acts." United States v. Gonzalez, 786 F.3d 714, 717 (9th Cir. 2015) (citation and internal quotations omitted). A multiple conspiracies instruction is appropriate where the indictment alleges one overall conspiracy, but the defendant alleges multiple conspiracies, and the trial evidence is such "that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Anguiano, 873 F.2d 1314, 1317 (9th Cir. 1989). A variance between the indictment and the government's proof at trial warrants reversal "only if it affects the substantial rights of the parties," as when the prejudice from "evidentiary spillover" makes it "highly probable

that [it] had substantial and injurious effect or influence in determining the jury's verdict." Duran, 189 F.3d at 1081 (citation omitted).

On appeal, Movant's counsel asserted that counts one and three should have been severed at trial from counts two, four and five, because counts one and three involved Moavant's dealings in 2013 with co-defendant Gruender, while the remaining counts involved his conduct in 2010 with other individuals, including Grafman. The Ninth Circuit Court of Appeals denied the claim, finding no prejudice because, even if the counts were severed, the evidence as to counts two, four and five would have been admissible to prove count one. In its summary of the evidence, the court found that:

> [Movant] engaged in a multi-year effort, involving his co-defendant, Mathew Gruender, prosecution witness Shane Grafman, and others, to move large quantities of Central American cocaine to Chicago by a common modus operandi – chartering private planes to land at outlying suburban airports to evade law enforcement scrutiny. Although various players entered and exited the conspiracy during this period, the goals and methods of the conspiracy remained the same."

Untied States v. Prigge, 830 F.3d 1094, 1096 (9th Cir. 2016).

The evidence presented at trial supported the court's conclusion that the goals and methods of the conspiracy were the same throughout the 3-year conspiracy. Grafman and Gruender and others had met Movant and were aware of the conspiracy's goal of trafficking cocaine throughout the United States; both Grafman and Gruender and others were aware of the use of private jets to transport to cocaine and the use of small airports; both Grafman and Gruender and others were aware of the movement of drugs and money in secret compartments. The fact that some conspirators were in involved at different times and were not aware of all of the other participants in the conspiracy does not establish separate conspiracies. All participating conspirators were aware of or had reason to know that other players were necessarily involved to effectuate the goals of the conspiracy, especially in light of the large amount of drugs trafficked and their widespread distribution. Also, Movant was clearly a central authority, and the other individuals' actions, while perhaps independent of each other, accumulated to achieve the

- 8 -

overall conspiracy. "A single conspiracy may involve several subagreements or subgroups of conspirators." United States v. Bibbero, 749 F.2d 581, 587 (9th Cir. 1984) (citation omitted) (the fact that some key participants and the method of operation of marijuana distribution conspiracy remained relatively constant - "militates against the separation of [] smuggling operation into smaller, independent conspiracies.")

Furthermore, Movant was convicted at trial on separate counts that charged Movant with participating in specific portions of the conspiracy. Movant was convicted on count five, possession with intent to distribute cocaine, which involved conduct occurring in count one, the drug conspiracy, and involved other co-conspirators. Movant was convicted on counts two and three, promotional and international money laundering, which involved conduct occurring in count four, the money laundering conspiracy count, and involved other co-conspirators. Thus, even if the jury was instructed that it could only convict on the conspiracy counts if it unanimously agreed that the defendant had participated in a specific portion of each conspiracy, the result would not have been different.

As the failure to give a unanimity instruction was not error, Movant fails to establish that his trial counsel was ineffective by not requesting the instruction or seeking dismissal of the conspiracy counts, or that appellate counsel was ineffective by not raising the issue on appeal.

### 2. Venue for Count Two.

Movant claims that his trial counsel and appellate counsel were ineffective for failing to raise a lack of venue claim as to count two, the promotional money laundering count involving the seizure of the duffel bag from the train on November 4, 2010 in New Mexico. Movant cites the venue provision of the statute, 18 U.S.C. § 1956(i), which provides that "a prosecution for an offense under this section or section 1957 may be brought in (A) any district in which the financial or monetary transaction is conducted; or (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified

unlawful activity from that district to the district where the financial or monetary transaction is conducted."

The evidence presented at trial relating to count two was that, on November 4, 2010, Movant and Joshua Hopkins purchased one-way tickets to travel by train from Chicago to Flagstaff, Arizona. In route, the train was stopped in Albuquerque, New Mexico by DEA agents, performing an interdiction. The agents discovered a suitcase in Movant and Hopkins' shared sleeper compartment that contained a large amount of cash. Movant acted very nervously when questioned, and claimed the suitcase belonged to Hopkins. Hopkins denied the suitcase was his and claimed that it belonged to Movant. Both Movant and Hopkins were free to leave after being questioned. The suitcase was then seized by agents as abandoned property and found to contain nearly $300,000.00 in cash, sorted as heat-sealed bundles wrapped in rubber bands. A trained drug-detection dog alerted to the currency.

Although Movant asserts initially that there was no proof that the funds were drug proceeds, the circumstantial evidence presented at trial was sufficient to establish possession, knowledge and that the funds were proceeds of unlawful activity. Movant asserts however that, because the proceeds were seized in New Mexico, venue in Arizona was not proper.

The United States Supreme Court has held that § 1956(i) supplements, rather than restricts venue options. Whitfield v. United States, 543 U.S. 209, 217-18 (2005). Courts have held money laundering offenses are continuing offenses, and that venue is proper "in any district where any part of the money laundering scheme occurred." See, United States v. Beddow, 957 F.2d 1330, 1336 (6th Cir. 1992) (clear that the funds involved in money laundering counts were acquired by selling drugs in charging district); U.S. v. Sax, 39 F.3d 1380, 1390 (7th Cir. 1994) ("[u]nder [18 U.S.C.] section 3237 venue is proper in any district where any part of the money laundering scheme occurred.").

Movant cites U.S. v. Cabrales, 524 U.S. 1 (1998), in support of his claim. The defendant in Cabrales had been charged in the Western District of Missouri with

laundering the proceeds of drug transactions that occurred in Missouri, even though all of the laundering transactions (bank deposits and withdrawals) occurred in Florida. The Supreme Court in <u>Cabrales</u> held that venue was proper only in Florida, the District in which the financial transactions took place. 524 U.S. at 8. The <u>Cabrales</u> case involved "concealment" money laundering however, pursuant to 18 U.S.C. 1956(a)(1)B)(ii), that is, conducting a financial transaction involving the proceeds of unlawful activity, "knowing that the transaction is designed in whole or in part" to conceal or avoid a transaction reporting requirement, and § 1957, transactional money laundering, and is thus distinguishable from the case at hand.

> Here, the crimes charged in Counts II and III are defined in statutory proscriptions, §§ 1956(a)(1)(B)(ii) and 1957, that interdict only the financial transactions (acts located entirely in Florida), not the anterior criminal conduct that yielded the funds allegedly laundered. . . . Notably, the counts at issue do not charge Cabrales with conspiracy; they do not link her to, or assert her responsibility for, acts done by others. Nor do they charge her as an aider or abettor, punishable as a principal, in the Missouri drug trafficking.

524 U.S. at 2.

In contrast, Movant was charged in count two with promotional money laundering pursuant to 18 U.S.C. § 1956(a)(1)(B). Count two of the indictment alleged that "[f]rom on or about November 4, 2010, in Illinois, New Mexico, Arizona and elsewhere, [Movant] and others knowing that the funds that they intended to be transported from Chicago, Illinois to Flagstaff, Arizona involved the proceeds of a specified unlawful activity [unlawful distribution of controlled substances]" transported the funds with the intent to promote the unlawful activity. (CRDoc. 41 at 2.) "Promotional money laundering is 'different from traditional money laundering because the criminalized act is the reinvestment of illegal proceeds rather than the concealment of those proceeds.'" <u>U.S. v. Wilkes</u>, 662 F.3d 524, 548 (9th Cir. 2011) (citation omitted).

The allegation, as set forth in count two of the indictment, charged Movant with money laundering as a continuing offense. Evidence was presented at trial that Movant was a principal of the drug trafficking conspiracy, that he resided in Arizona and

conducted his business in Arizona, that the funds seized were constructively in his possession and involved proceeds of his drug trafficking conspiracy, and that the funds were transported to continue and promote his drug trafficking. Additionally, the money seized from the train in New Mexico was destined for Flagstaff, Arizona. The Government's burden of establishing venue is by a preponderance of the evidence. United States v. Lukashov, 694 F.3d 1107, 1120 (9th Cir. 2012). There was ample evidence establishing venue in the District of Arizona, and thus, Movant's claim lacks merit. Counsel was therefore not ineffective for failure to raise a venue challenge at trial or on appeal.

### 3. Sufficiency of the Evidence on Count Two.

In assessing a claim of insufficiency of the evidence, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). To prove the crime of money laundering, the government must show that a person (1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, (2) conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, (3) with the intent to promote the carrying on of specified unlawful activity." Wilkes, 662 F.3d at 548 (9th Cir. 2011) (quotations and citations omitted); 18 U.S.C. § 1956(a)(1)(A)(i).

Co-conspirator Grafman testified that the nearly $300,000 in cash found in Movant's train cabin were the proceeds of Movant's drug trafficking operation. Additionally, a drug detection dog alerted to the currency, indicating the presence of narcotics. Given the large amount of cash, the manner in which it was packaged, the suspicious nature of Movant's last minute, one-way travel plan, and the inconsistent statements made by Movant and Hopkins regarding ownership of the funds was sufficient to establish unlawful activity and the knowledge thereof. Considering the other evidence presented at trial - the significant drug quantities transported, the expenditure of large

sums of cash - there was sufficient evidence presented at trial to find Movant guilty of promotional money laundering. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt**.** Counsel was therefore not ineffective by not raising insufficiency of the evidence on count two at trial or on appeal.

### 4. Sufficiency of the Evidence on Count Three.

Movant asserts that there was insufficient evidence that the $100,000.00 transferred from Phoenix to Guatemala was the proceeds of a specified unlawful activity, or that the transaction was designed to conceal the nature, location, source, ownership or control of the money. A charge of international money laundering requires evidence that the defendant transported, transmitted, or transferred money from the United States to another country, "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(A). It does not require proof of concealment or that the money was the proceeds of unlawful activity.

The evidence presented at trial was sufficient to convict Movant on count three. Co-conspirator Gruender testified that Movant instructed him to transfer $100,000.00 to Guatemala in order to further a relationship with Latin American drug suppliers. Records of the transfer and emails from Movant to Gruender, found during the search of Movant and Gruender's properties by law enforcement agents, corroborated his testimony. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of money laundering as charged in count three beyond a reasonable doubt. As Movant's claim lacks merit, his counsel was not ineffective by not raising the issue at trial or on appeal.

### 5. Sufficiency of the Evidence on Count Four.

Movant claims that trial counsel was ineffective for failing to move for a judgment of acquittal pursuant to Fed.R.Crim.P. 59 as to count four, charging Movant with conspiracy to commit money laundering, and that counsel was also ineffective for not raising insufficiency of the evidence on appeal. Movant asserts that there was

insufficient evidence produced at trial to prove that any monies were proceeds of unlawful activity, were concealed in any way, or were used to promote a specified unlawful activity.

Count four alleged that the money laundering conspiracy occurred between April, 2010, and September 21, 2013. Gruender and Grafman both testified that they agreed with Movant to transport or transfer cocaine proceeds in order to further Movant's drug trafficking operation. There was testimony and documentary evidence presented establishing that large amounts of cash was transported by car and train around the country, and that $100,000.00 was transferred by wire at Movant's direction out of the country. Additionally, Movant was convicted of substantive counts two and three (promotional and international money laundering), both of which involved Movant's conspiring with others to launder drug proceeds. There was also evidence of co-conspirators' knowledge of, and use of hollowed-out containers to transport proceeds. Considering the direct and circumstantial evidence presented at trial, and viewing it a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Movant's challenge to the sufficiency of the evidence lacks merit, and therefore counsel was not ineffective in not raising the issue at trial or on appeal.

### 6. The Government's Closing Argument.

Movant claims that counsel was ineffective when he failed to object at trial to, or raise as an issue on appeal the fact that the government, during closing argument, shifted the burden of proof to the defendant, vouched for the government's witness and alluded to facts not in evidence. (CVDoc. 1 at 42.) Movant does not identify the statements made, due to the "interest of brevity and due to page limitations." (Id.) He asserts that he has the issue briefed, "should this Court wish him to present [it]." (Id.) In his Reply, Movant argues that the court's instruction to the jury that "arguments by lawyers are not evidence" failed to cure any prejudice" because of the type of vouching by the government. (CVDoc. 12 at 14.) Despite having a second opportunity to do so in his

Reply, Movant did not identify the improper argument or vouching, or identify where in the record it took place, but reiterates that he will submit the information "if the Court requests such." (Id.)

"As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses., ... Such prosecutorial vouching, which consists of either placing the prestige of the government behind the witnesses through personal assurances of their veracity or suggesting that information not presented to the jury supports the witnesses' testimony, is improper." United States v. Molina, 934 F.2d 1440, 1444-45 (9th Cir. 1991) (internal citation omitted). The prosecution has reasonable latitude, in closing argument, "to argue reasonable inferences based on the evidence." Id. at 1445.

Despite Movant's failure to identify where in the record the vouching occurred, the Court has reviewed the government's closing and rebuttal arguments and finds no improper shifting of burden, or improper vouching. The government summarized the witnesses' testimony, how the testimony related to other evidence presented, and how the testimony supported the government's case. (CR Doc. 225 at 518-548, 579-594.) Even if any of the statements made by the government could be construed as improper vouching, any such error was harmless as the Court instructed the jurors that arguments by counsel are not evidence, and in addition, the evidence against Movant was overwhelming. See United States v. Nobari, 574 F.3d 1065, 1083 (9th Cir. 2009) (holding defendants not prejudiced by prosecutorial misconduct as it was harmless in light of "overwhelming evidence" presented); United States v. Necoechea, 986 F.2d 1273, 1280 (9th Cir. 1993) (holding that the general instruction regarding the need to review cooperator testimony with "greater care" cured any vouching by the prosecutor in opening statement). As no improper vouching occurred, and in any event, Movant suffered no prejudice, Movant's ineffective assistance of counsel claim fails.

### 7. Hopkins' Statements to Law Enforcement.

Movant next claims that counsel was ineffective when he failed to raise on appeal

the court's overruling his objection to DEA agent Jarrell Perry's testimony relating to statements made by Joshua Hopkins to DEA agents in New Mexico on November 4, 2010, onboard the Amtrak train. (CVDoc. 1 at 42.) The Court overruled the objection, finding that the statements were made in furtherance of the conspiracy pursuant to Fed. R. Evid. 801(d)(2). (Id.) Rule 801(d)(2)(E), Fed.R.Evid., provides that a party's co-conspirator's statements that are made during and in furtherance of the conspiracy are not hearsay. Statements made by a co-conspirator to a law enforcement agent, before arrest, that are an attempt to conceal the conspiracy are statements made in the course of, and in furtherance of the conspiracy, and are therefore not hearsay. United States v. Lim, 984 F.2d 331, 336 (9th Cir. 1993).

Both Movant and co-conspirator Hopkins made statements to law enforcement officers conducting an investigation into the suitcase containing a large amount of cash, denying ownership of the funds, and claiming that the suitcase belonged to the other. The circumstances surrounding the events, and the testimony of co-conspirator Grafman, was sufficient to establish that the money was the proceeds of unlawful drug trafficking. In fact, Movant was convicted on count two, the money laundering count involving these events. Neither Hopkins nor Movant were arrested after they were questioned on the train. As their statements allowed them to escape detection, avoid arrest and continue the unlawful activity, their statements denying ownership of the suitcase were made during the conspiracy, and in furtherance of the conspiracy. Because such statements are not hearsay, they were admissible at trial through the testimony of the officers. As Movant's claim has no merit, his counsel was not ineffective in failing to raise this issue on appeal.

### 8. Sentencing.

Movant claims that his counsel was ineffective for failing to raise at sentencing or on appeal the court's adoption of the United States' Probation Officer's recommendation that the court apply the specific offense characteristics from both U.S.S.G. §§ 2D1.1 and 2S1.1, which resulted in double counting, and constituting improper grouping. (CVDoc. 1 at 42.) Movant, as before, does not provide briefing on the issue, in the "interest of

brevity and page limitations." (Id.) The government responds that the plain language of the relevant guideline provisions authorized their application.

The Ninth Circuit has "routinely upheld the cumulative application of Guidelines provisions over claims of impermissible double counting so long as the application was consistent with the relevant Guideline instructions." United States v. Joey, 845 F.3d 1291, 1296 (9th Cir. 2017) (internal quotes and citation omitted). "[T]he focus in an impermissible double counting challenge [] is on the Sentencing Commission's intent, and the primary touchstone for discovery of that intent is the text of the Guidelines manual." Id. at 1297.

When criminal charges are closely related and involve "substantially the same harm [they] shall be grouped together into a single Group" for sentencing purposes. U.S.S.G. § 3D1.2. This includes "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). Where the charge is money laundering, the base offense level is "[t]he offense level for the underlying offense from which the laundered funds were derived." U.S.S.G. § 2S1.1(a)(1). The Presentence Investigation report author grouped all counts pursuant to § 3D1.2(c) and determined Movant's base offense level to be 36, as the amount of cocaine involved in the drug trafficking was 122 kilograms. (CRDoc. 185 at 10.) Another two levels were added as Movant was convicted of 18 U.S.C. §1956(h), pursuant to § 2S1.1(b)(2)(B). Another two levels were added as the offense involved sophisticated money laundering, pursuant to § 2S1.1(b)(3). Four levels were then added by the court at sentencing, as the court found, over objection by Movant's counsel, that Movant was an organizer or leader of a conspiracy that involved five people or more. (CRDoc. 228 at 15-16.) Movant's resultant guideline range was life imprisonment. (CRDocs. 185 at 17; 228 at 24.)

The application of the Guidelines to Movant's sentence was consistent with the Guideline instructions, and Movant does not demonstrate how it resulted in the double counting of conduct. The base offense level was determined by reference to the total

amount of drugs involved in the drug conspiracy. The enhancements all related to conduct by Movant separate and apart from the quantity of drugs involved. No double counting occurred.

Nonetheless, although the Movant's guideline sentence was life imprisonment, the court granted a variance and ultimately sentenced Movant to a below-the-guidelines sentence of 320-months on counts one and five. (CRDocs. 193, 194.) As Movant's claim that the court's application of the Guidelines resulted in double counting lacks merit, Movant's counsel was not ineffective by not raising the issue at trial or on appeal.

Movant also claims that counsel was ineffective in not objecting to the court's application of the leadership enhancement to the drug conspiracy, rather than the money laundering conspiracy, "under USSG § 3B1.1." (CVDoc. 1 at 43.). Even if Movant's claim had merit, the evidence presented at trial established that Movant was a leader and organizer of both the drug, and the money laundering conspiracy, and that there were five or more participants, to include Movant, Grafman, Gruender, Hopkins, Labriola and Burke. Movant has not established that his claim has merit, and thus Movant's claim of ineffective assistance of counsel fails.

### 9. Cumulative Errors.

Movant asserts that, even if no single error of counsel is significant enough to warrant reversal, the cumulative effect of all errors establishes prejudice, citing Boyde v. Browne, 404 F.3d 1159, 1176 (9th Cir. 2005). Because this Court has determined that each of Movant's ineffective assistance of counsel claims lack merit, there can be no cumulative error. See, United States v. Solorio, 669 F.3d 943, 956 (9th Cir. 2012).

### CONCLUSION

The Court finds that the motions and the files and records of the case conclusively show that Movant is entitled to no relief, and therefore the Court will deny Movant's request for an evidentiary hearing. 18 U.S.C. § 2255(b). Having determined that Movant's ineffective assistance of counsel claims lack merit, the Court recommends that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody be denied.

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CVDoc. 1 and CRDoc. 240) be **DENIED and DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

Dated this 23rd day of January, 2018.

_____
Honorable Michelle H. Burns
United States Magistrate Judge