1 WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff/Respondent,<br><br>v.<br><br>Terance Taylor Prigge,<br><br>Defendant/Movant. | No. CV-17-00327-PHX-GMS (MHB)<br>CR-13-01363-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Movant Terance Taylor Prigge's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) On January 23, 2018, Magistrate Judge Michelle H. Burns issued a Report and Recommendation ("R&R") recommending that the motion be denied and dismissed with prejudice. (Doc. 13.) Movant timely filed objections. (Doc. 17.) For the following reasons, the Court denies Prigge's Motion and adopts the R&R of Magistrate Judge Burns.

## BACKGROUND

Prigge was charged by Superseding Indictment with the following: conspiracy with the intent to distribute controlled substance (Count 1); promotional money laundering (Count 2); international money laundering (Count 3); money laundering conspiracy (Count 4); and possession with the intent to distribute cocaine (Count 5). Because no party has objected to the factual and procedural background as set forth in the R&R, the Court adopts the background as an accurate account.

\ \ \

**STANDARD OF REVIEW**

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**DISCUSSION**

Prigge includes nine claims of ineffective assistance of counsel in his Motion. (Doc. 1.) He raises seven objections to the R&R, and this court will consider only those objections in its *de novo* review of the record and submissions. *See Thomas*, 474 U.S. at 149.

**I. Ineffective Assistance of Counsel**

Prigge bears the burden of showing that his counsel was ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). To succeed Prigge must show (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the failure prejudiced him. *Id.* Prigge can establish prejudice by showing that there is a "reasonable probability" that the proceedings would have been different but for counsel's deficient performance. *Id.*

When courts review the professional judgment of trial counsel, the review is limited. In these cases, the presumption is that the decisions of counsel fall within a wide range of reasonable assistance. *Id.* 689–90. Courts should avoid "the distorting effects of hindsight" as much as possible and "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Even if counsel does not substantially investigate every single plausible line of defense, assistance can still be "effective." *Id.* at 681. Indigent clients do not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides

not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Establishing ineffective assistance of appellate counsel requires Prigge to show that counsel's failure to raise a merit-worthy issue on appeal was unreasonable and that Prigge was prejudiced by the failure. *Moorman v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010).

### A. Unanimity Instruction Objection

Prigge contends that the evidence at trial established the existence of multiple conspiracies. This, Prigge argues, created a "genuine possibility of jury confusion," *see United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir. 1983), because some of the jurors might have convicted Prigge on the basis of different conspiracies. The Ninth Circuit rejected this idea on Prigge's direct appeal.

> Prigge engaged in a multi-year effort, involving his co-defendant, Mathew Gruender, prosecution witness Shane Grafman, and others, to move large quantities of Central American cocaine to Chicago by a common modus operandi—chartering private planes to land at outlying suburban airports to evade law enforcement scrutiny. Although various players entered and exited the conspiracy during this period, the goals and methods of the conspiracy remained the same.

*United States v. Prigge*, 830 F.3d 1094, 1096 (9th Cir. 2016).

Although Gruender and Grafman never directly worked with each other, they were both heavily involved and invested in the operation's success. Grafman worked with Prigge to bring drugs from Latin America to the United States. (CR-13-01363 Doc. 169 at 251–393.) Grafman and Gruender were both involved in arranging private flights for Prigge to transport drugs to the Chicago area. (CR-13-01363 Doc. 169 at 321–22; Doc. 168 at 7–8, 75–76.) Gruender accompanied a shipment of drugs flown to the Chicago area. (CR-13-01363 Doc. 168 at 7–8.) When Gruender's home was searched, authorities found a large welding machine that had been outfitted with a secret compartment for transporting drugs. (CR-13-01363 Doc. 225 at 355–59.) Grafman was familiar with the machine and knew the intricate procedure for accessing the hidden compartment. (CR-13-01363 Doc. 169 at 379–83.) Both men knew of a specially outfitted car that Prigge

gave to an associate in Chicago to transport drugs and money. (CR-13-01363 Doc. 168 at 103–04; Doc. 169 at 334–35.)

The trial evidence also established the existence of a single overall conspiracy to launder money (Count 4). Grafman helped transport cash proceeds from drug sales in Chicago back to Arizona, and at one point was pulled over in Oklahoma during a return trip with approximately $700,000 in cash. (CR-13-01363 Doc. 169 at 325–34.) Gruender was involved in wiring money to Prigge's associates in Latin America, and wired $100,000 to an individual in Guatemala as part of Prigge's operation. (CR-13-01363 Doc. 168 at 7–8, 62–63.) Emails from Prigge were recovered from Gruender's home detailing instructions on making the transfer. (CR-13-01363 Doc. 168 at 63.)

In the face of the evidence at trial, a jury could not reasonably conclude that there were distinct conspiracies that were unrelated to the overall conspiracy alleged in the indictment. The evidence tends to show a single, overarching conspiracy to transport controlled substances with intent to distribute (Count 1) and a conspiracy to launder money (Count 4). The evidence at trial showed that Gruender and Grafman "knew, or had reason to know, . . . that [their] benefits were probably dependent upon the success of the entire operation. *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir. 1999) (internal quotations and citation omitted). The fact that Gruender and Grafman never actually met each other is immaterial.

A multiple conspiracies instruction was not required in this case, so Prigge's trial counsel was not deficient by failing to request such an instruction. The Court agrees with the analysis and conclusions of the Magistrate Judge.[1]

\\\

---

[1] The Magistrate Judge also noted, and the Court agrees, that even if the jury had been instructed that Prigge could only be convicted if it unanimously agreed that he had specifically participated in each conspiracy, the result would not have been different. This is because Prigge was convicted on separate counts charging him with participation in specific portions of the conspiracy. The jury convicted Prigge on Count Five (possession with intent to distribute), which involved conduct—with co-conspirators—occurring in Count One (the drug conspiracy). Similarly, the jury convicted Prigge on Counts Two and Three (promotional and international money laundering), which again involved conduct occurring in Count Four (the money laundering conspiracy).

- 4 -

### B. Venue Objection

Prigge next objects to the R&R's conclusion that his counsel was not deficient in failing to object to venue regarding Count Two (promotional money laundering). Generally, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. The Federal money laundering statute, 18 U.S.C. § 1956, contains a venue provision that supplements, but does not exclude, Federal Rule 18. *Whitfield v. United States*, 543 U.S. 209, 218 (2005). 1956(i)(1) provides that prosecutions for money laundering may be brought in

> (A) any district in which the financial or monetary transaction is conducted; or
> (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

In money laundering cases, then, venue may lie in any district appropriate under § 1956(i)(1) *or* Federal Rule 18.

The Ninth Circuit has held that money laundering qualifies as a "continuing offense" and that venue is appropriate both in the district where the money was obtained and the destination of the transported funds where the transaction is consummated. *United States v. Angotti*, 105 F.3d 539, 544–45 (9th Cir. 1997); *see also* 18 U.S.C. § 3237(a) ("Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.").

The relevant evidence at trial showed that Prigge was attempting to conduct a financial transaction by transporting or delivering the proceeds from the sale of controlled substances from Chicago to Arizona in order to further his operation. Prigge was traveling on a one-way ticket with an associate from Chicago to Flagstaff, Arizona. (CR-13-01363 Doc. 225 at 276.) DEA agents in New Mexico found $296,835 in cash in a bag found inside Prigge's room on the train. (CR-13-01363 Doc. 225 at 307.) The cash was

found packaged in heat-sealed bags. (CR-13-01363 Doc. 225 at 307.)

Prigge relies on *United States v Cabrales*, 524 U.S. 1 (1998) to support his claim that venue was improper in Arizona. *Cabrales*, however, was a different situation than this case. The defendant in *Cabrales* was convicted of money laundering in Missouri for activity that only took place in Florida. She did not transport the money from Missouri to Florida, and was not involved in the drug operations in Missouri that generated the funds. *Id.* at 4. The Court in *Cabrales* stated that the question in that case was "the place appropriate to try the 'after the fact' actor." *Id.* at 8.

Prigge was not an "after the fact" actor. Rather, he was deeply involved in the ongoing conspiracy that stretched from Arizona to Chicago. He was involved not only in the money laundering aspect of the operation, but also in the distribution of the drugs that generated the money.

Prigge was involved in money laundering—a continuing offense. The Ninth Circuit, in *Angotti*, "follow[ed] the lead of the Sixth Circuit," which had previously concluded that venue in money laundering cases "is proper in any district where any part of the money laundering scheme occur[s]." *United States v. Beddow*, 957 F.2d 1330, 1336 (6th Cir. 1992). Prigge's operation was based in Arizona, he conducted his business in Arizona, and he was caught transporting $296,835 in cash to Arizona to promote his operation. The government met its burden of proving venue by a preponderance of the evidence. *See United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012). Prigge's lawyer was not deficient by failing to object to venue.

**C.     Sufficiency of the Evidence on Counts Two, Three, and Four**

The Magistrate Judge concluded that there was sufficient evidence to convict Prigge of Counts Two (promotional money laundering), Three (international money laundering), and Four (money laundering conspiracy), and so it was reasonable for Prigge's counsel to not raise a sufficiency claim. Prigge objects. When alleging insufficiency of the evidence, the alleging party must prove that, "viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018) (internal quotations and citation omitted). Prigge fails to meet this burden.

### 1. Count Two

Establishing a charge of promotional money laundering requires proof that a person (1) conducts or attempts to conduct a financial transaction that involves proceeds from a specified unlawful activity, (2) knowing that the property involved is the proceeds of the unlawful activity, (3) and intending to promote the continuation of the specified unlawful activity. *United States v. Wilkes*, 662 F.3d 524, 548 (9th Cir. 2011) (internal quotations and citation omitted); *see also* 18 U.S.C. § 1956(a)(1)(A)(i). 18 U.S.C. § 1956(c)(4) defines "financial transactions" to include "the movement of funds by wire *or other means*." 18 U.S.C. § 1956(c)(4) (emphasis added).

Prigge was stopped in Albuquerque with nearly $300,000 in cash. The money was divided into bundles and heat-sealed in plastic. (CR-13-01363 Doc. 225 at 301.) Prigge was traveling with the money on a one-way train ticket from Chicago to Flagstaff. (CR-13-01363 Doc. 225 at 276.) He became nervous when questioned about the bag containing the money. (CR-13-01363 Doc. 225 at 289–90.) Prigge and his traveling companion both denied ownership of the bag. (CR-13-01363 Doc. 225 at 298.) A law enforcement K-9 alerted to the cash, indicating the presence of narcotics. (CR-13-01363 Doc. 225 at 315–29.) Shane Grafman testified that money obtained from the drug trafficking operation was not all taken as profit but was also used "to expand the business." (13-CR-01363 Doc. 169 at 298.)

This evidence, together with all the other evidence at trial, was sufficient to allow a rational finder of fact to conclude that the government had proven each of the elements of promotional money laundering beyond a reasonable doubt.

### 2. Count Three

Establishing international money laundering requires proof that the defendant, "with the intent to promote the carrying on of specified unlawful activity," transmits,

transports, or transfers money from the United States to another country. 18 U.S.C. § 1956(a)(2)(A).

Gruender testified that he wired $100,000 to Guatemala after being told to do so by Prigge. (CR-13-01363 Doc. 168 at 7–8, 62–63.) Prigge told Gruender that the money was to expand a relationship with a drug supplier. (CR-13-01363 Doc. 168 at 7–8.) Authorities also found other receipts of money transfers to Guatemala at Prigge's residence. (CR-13-01363 Doc. 225 at 344–49.)

This evidence was sufficient to allow a rational trier of fact to conclude that the government had proved the crime beyond a reasonable doubt.

### 3. Count Four

18 U.S.C. § 1956(h) penalizes "[a]ny person who conspires to commit" any of the money laundering offenses listed in that section. Both Gruender and Grafman testified that about Prigge's involvement in transporting drug proceeds, and Grafman testified about his personal involvement in transporting cash for Prigge. (CR-13-01363 Doc. 169 at 325–34; Doc. 168 at 72–73.) As discussed previously, Prigge himself was stopped with drug proceeds on the train in New Mexico.

Viewing all this evidence in the light most favorable to the prosecution, a rational juror could have found the essential elements of Count Four beyond a reasonable doubt. The same is true of Counts Two and Three. Prigge's counsel was not ineffective by failing to raise sufficiency of evidence challenges at trial or on appeal.

### D. Government's Closing Argument

Prigge's next objection to the R&R's conclusions is that his counsel was deficient by not objecting to the government's closing argument. Prigge's objections refer to improper vouching, alluding to facts not in evidence, and improper shifting of the burden of proof during the government's closing. But Prigge does not point to a single improper statement. This court, like the Magistrate Judge, has reviewed the transcripts of the government's closing argument and has found nothing improper. The failure to object to the government's closing argument does not fall below an objective standard of

reasonableness, see *Strickland*, 466 U.S. at 686–87, so Prigge's counsel was not ineffective on this point.

### E. Statements by Joshua Hopkins

Finally, Prigge objects to the Magistrate Judge's conclusion that his counsel was not ineffective in failing to challenge on appeal the admission of statements made by Joshua Hopkins. At trial, statements made by Joshua Hopkins to DEA agents during the train stop in New Mexico were admitted as non-hearsay under Federal Rule of Evidence 801(d)(2)(E). That Rule designates as "not hearsay" any statement offered against a party that "was made by the party's coconspirator during and in furtherance of the conspiracy."

Joshua Hopkins' statements were not hearsay. Evidence at trial established the existence of the conspiracy during the time of the Amtrak stop in New Mexico. Statements by Joshua Hopkins regarding the bag full of cash—statements in which he claimed that the bag did not belong to him even though the bag appeared to be part of a matching set with a bag he admitted was his—were attempts to cover up the existence of the conspiracy. And statements attempting to hide a conspiracy are statements made in furtherance of the conspiracy they seek to conceal. *United States v. Lim*, 984 F.2d 331, 336 (9th Cir. 1993). Prigge's counsel was not ineffective in failing to raise the issue on appeal.

**IT IS THEREFORE ORDERED** that Magistrate Judge Burns' R&R (Doc. 13) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Movant Prigge's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal is **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.

///

- 9 -

1     **IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 5th day of October, 2018.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge